UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **HEIRS OF FERNANDO MACIAS, STEVEN MACIAS, YVONNE SHILLING, AND WALTER MACIAS AND REPRESENTATIVE OF THE ESTATE OF FERNANDO MACIAS, PLAINTIFFS**<br><br>V.<br><br>**BEXAR COUNTY, BEXAR COUNTY HOSPITAL DISTRICT, UNIVERSITY MEDICAL ASSOCIATES, SHERIFF JAVIER SALAZAR, LAURA BALDITT, RUBEN VELA, JOHN DOES 1-5.**<br><br>**DEFENDANTS.** | **Case No. 5:21-cv-00193-ESC**<br>**Jury Demanded** |

## FIRST AMENDED COMPLAINT

Plaintiffs, Heirs of Fernando Macias, Yvonne Shilling, Steven Macias, and Walter Macias as Representative of the Estate of Fernando Macias, and Individually, bring this their First Amended Complaint against Bexar County, Bexar County Hospital District, University Medicine Associates (UMA), Defendant Sheriff Javier Salazar, Laura Balditt, Ruben Vela and John Does 1-5, in their individual capacity, and would respectfully show as follows:

### I. INTRODUCTION

1. The Macias family's tragedy started when Walter reported his 61-year old brother, Fernando Macias, who suffered from severe and well documented mental illness.

1

2.     Walter Macias, Fernando Macias' brother, called for assistance to get a mental health warrant issued to protect his mother's safety, the Bexar County Sheriff's office responded.

3.     After the response, there was a standoff between Fernando and the deputies, and soon after, the Texas Rangers SWAT team joined and relieved the Bexar County deputies. After the Bexar County Deputies left the scene, The Texas Rangers SWAT team openly fired upon the home, striking and killing Fernando Macias' Mr. Mother Amelia Macias.

4.     After DPS agents killed his mother, Fernando Macias was injured, suffering a gunshot wound, and arrested.

5.     He was booked and taken into custody he was noted to weigh over 300 pounds when he was placed in the Bexar County jail, operated by Defendant Sheriff Javier Salazar.

6.     In september 2018, Fernando Macias was found incompetent to stand trial, a very high burden to reach.

7.     Fernando was treated by University Medicine Associates physicians for the gunshot wounds and remained in University Hospital until March 2018. There is no indication of medical care after his release, in March 2018 until November 2018 when he was taken to the jail infirmary,

8.     Fernando Macias was not provided adequate medical care while in the custody of Bexar county, including mental health care by University Medicine Associates physicians or anyone else.

9.     Fernando saw multiple medical providers who ignored his serious medical needs prior to going to the University Hospital, including Harlan J. Goode, Howell A Cone, Jonathan D. Smart, Amir S Anvari, Sandhya Vinu-Nair, Ambrose Chan RN, and Dana Ritz, RN.

10. The hospital admitted Fernando Macias from December 2, 2018-December 11, 2018.

11. From December 11, 2018-December 15, 2018, Fernando Macias returned from the hospital to the Jail infirmary, where University Hospital and University Medicine Associates employees Robert Parker, RN, Erica E Martinez-Castro, RN, Smitha J Kattapuram, RN, John E Bennett, RN, John Hogan, RN, Olga L Ali, PA, Jonathan Smith, RN, and Andrew Gonzalez, each continued to ignore his serious medical needs, namely sepsis.

12. And December 15, 2018, he returned to the hospital and died on December 16, 2018.

13. Notice from the Texas Commission on Jail Standards outlining the requirements sheriffs must follow to comply with the newly enacted S.B. 1849. ("The Sandra Bland Act") S.B. 1849 amended Tex. Code Crim. Proc. Art. 16.22 was sent to Defendant Sheriff Javier Salazar.

14. Defendants were required to "give prisoners the ability to access a mental health professional at the jail through a telemental health service 24 hours a day" and "give prisoners the ability to access a health professional at the jail or through a telehealth service 24 hours-a-day or, if a health professional is unavailable at the jail or through a telehealth service, provide for a prisoner to be transported to access a health professional." Tex. Gov't Code, § 511.009(a)(23)(A-B).

15. Defendant Salazar, as Sheriff, is responsible for those incarcerated at his jail and is "the keeper of the county jail," "shall safely keep all prisoners committed to the jail," and "shall continue to exercise supervision and control over the jail."

16. Defendant Bexar County Hospital District d/b/a University Health Systems ("UHS") is responsible for the medical treatment of all inmates at the Bexar County Jail and provided medical and mental health care to Fernando Macias while he was incarcerated.

17. Mr. Macias remained in jail under UHS medical providers' care until he was taken to the UHS ER on December 16, 2018, after being found down and unresponsive in his cell.

18. He presented to the hospital weighing 196 pounds with sepsis, pressure sores[1], nail beds on great toe missing, PMH of CKD5, declining hemodialysis for the past year while he was in the custody of Bexar County, in addition to DM2, HTN, hypothyroidism, and Schizoaffective Disorder, Delusional Disorder.

19. Fernando Macias was brought to the UHS ER. His BP was noted to be low at 82/53 with a pulse of 40 malnourished and suffering from dehydration. He was also noted to be hypothermic and hypoxic (pO2 82% on room air). On arrival, he was found to have serum potassium of 6.7.

20. He was left to languish in custody by University Medical Associates employees. His necessary dialysis was not given, treatments, vital signs, medicines, or exams for the time he was in custody.

21. The jail did not provide any useful medical records to the hospital upon his transfer, so he could not receive the necessary treatment. The jail noted he refused any treatment, yet no mental health evaluation or treatment was provided to Mr. Macias while in custody.

## II. Parties

---

[1] Decubitus ulcers/ pressure sore is defined as "damage to the skin or underlying structure as a result of tissue compression and inadequate perfusion." Taber's Cyclopedic Medical Dictionary 1675 (19th ed. 2001). They "typically occur in patients who are bed or chair bound." *Clermont Nursing & Convalescent Ctr. v. Leavitt*, 142 F. App'x 900 (6th Cir. 2005)

22. Heirs of Fernando Macias, P.O. Box 27353, Houston, TX 77227.

23. Walter Macias, individually and as a representative of the Estate of Fernando Macias P.O. Box 27353, Houston, TX 77227.

24. Steven Macias, as heir, P.O. Box 27353, Houston, TX 77227.

25. Yvonne Schilling, as heir, P.O. Box 27353, Houston, TX 77227.

26. Bexar County may be served wherever the County Judge Nelson Wolff may be found.

27. Sheriff Salazar Javier, individually, who may be served wherever he may be found.

28. University Medical Associates, 21727 W I-10, San Antonio, TX 78257

29. Laura Balditt individually, who may be served wherever she may be found.

30. Bobby Hogeland, who may be served wherever he may be found.

31. Ruben Vela, individually, who may be served wherever he may be found.

### III.   JURISDICTION AND VENUE

32. This Court has jurisdiction over Plaintiffs' state and federal claims, under 28 U.S.C. sections 1331 and 2201, 42 U.S.C sections 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and supplemental jurisdiction.

33. Venue is proper in this Court under 28 U.S.C. section 1391(b) because the incidents at issue occurred in Bexar County, Texas.

### IV.   ADDITIONAL FACTS

34. On March 6, 2018, at approximately 5:00 PM, Amelia and Fernando were at their home.

35. From the time Fernando Macias was taken into custody until the time he died on December 16, 2018, Defendants were acutely aware of Fernando Macias's serious medical needs and mental health condition.

36. After Fernando Macias was taken into custody until the time he died on December 16, 2018, he awaited trial and placement in the state mental health hospital due to his well documented mental health condition.

37. Medical records indicate that Fernando was on the list for placement at a state hospital for comfort care. There is a significant backlog in the system and he was not likely to be placed until next year, yet made no provisions to have him placed anywhere else.

38. He was not placed under the care of a psychiatrist or other mental health provider while in custody of the jail, despite the fact he was awaiting placement at the overcrowded state mental health hospital and had a serious medical need resulting in renal and liver failure.

39. Bexar County medical records show that he was diagnosed with Schizoaffective Disorder, Delusional Disorder, renal failure, liver failure, dehydration, and malnourished. He was later "found down and unresponsive in his cell."

40. According to records Fernando Macias refused his dialysis treatment and other daily needs, another indication of his deteriorating mental capacity and mental illness.

41. He was housed in the infirmary at the Bexar County Jail, operated by defendant University Health Systems, in November 2018.

42. Defendants failed to appropriately respond to the mental health needs of Fernando Macias, defendants failed physical psychological injury, harm, screen and evaluate,

43. From the time Fernando Macias entered custody until April 5, 2018, Defendant, Laura Balditt was the Assistant Bexar County Jail Administrator.

44. In April 2018, Defendant, Ruben Vela was the interim Assistant Jail Administrator at the Bexar County Adult Detention Center Facility, until September 2018.

45. In September 2018, Defendant, Bobby Hogeland, a man without any administrative experience according to the County Judge, became the Assistant Chief Deputy and Jail Administrator.

46. September 28, 2018 through at least the date of Fernando Macias's death on December 16, 2020, Ruben Vela acted as interim jail administrator.

47. There were a total of three different Assistant Jail Administrators, responsible for the health care of inmates of the Bexar County jail during the time Fernando Macias was in custody and deprived of medical care and ignored his serious medical needs, including mental health.

48. Six inmates died in the short period from January 19, 2018 through February 22, 2019, Bexar County Jail due to the conditions of confinement of the Bexar County jail.

49. The same actions that led the County Judge Nelson Wolff to describe the death of Janice Dotson-Stephens as "A lot of incompetence. A lot of breakdown." apply to the actions leading to the death of Fernando Macias.

50. Further, Bexar County Jail failed to meet the statutory standards required by the Texas Commission on Jail Standards, develop and implement mental disabilities plan, properly house, or supervise detainees, in violation of Tex. Admin. Code, tit. 37, § 267, 271, 273, and 275.

## V.    CLAIMS FOR RELIEF

**Claim 1: 42 U.S.C. § 1983 Fourth and Fourteenth Amendment Violations**

51.    Plaintiff incorporates facts from all paragraphs stated within the complaint as fully stated in this section.

52.    This claim is brought against all defendants in their respective individual capacities, pursuant to 42 U.S.C. section 1983, which is entitled the Civil Rights Act and *<u>this constitutional claim is not intended to be a claim against the State of Texas</u>*.  The critical language of the Civil Rights Act sets forth, in part:

> *"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Fourteenth and Fourth Amendments: Due Process, Unlawful Search, Seizure, and Detention.*

53.    Defendant Officers violated clearly established constitutional rights, and their conduct was objectively unreasonable in light of clearly established law at the time of the relevant incident and with deliberate indifference to Mr. Macias's serious medical needs.

54.    Defendants were deliberately withheld medical treatment from Mr. Macias.

55.    Defendants were aware that he was dehydrated and malnourished, had serious medical needs including mental health issues.

56.    Furthermore, defendants deprived Fernando Macias of necessary medical care under the Fourteenth Amendment by engaging in the actions stated herein.

57.    Fernando Macias suffered mental anguish in the months, weeks, days, leading up to his death, after the defendants deliberately withheld medical care from Fernando Macias,

including mental health care in direct defiance of the Sandra Bland Act enacted in September 2017.

## Claim 1: Delay and Denial of Medical Care

58. Between March 2018 and November 2018 Fernando Macias had no medical care, and specifically mental health, according to medical records.

59. In addition to the denial and delay in mental health care, Fernando Macias' other serious medical needs were ignored. He had been in the hospital on December 11, 2018, and returned suffering from sepsis. Sepsis is a life-threatening condition that occurs when inflammation "develops in response to infection but extends beyond the infection site to affect the whole body. Sepsis <u>requires early suspicion and rapid treatment for survival every hour that clinicians failed to complete the anti-sepsis protocols, known as the "three-hour bundle," mortality rates increase</u>, it is characterized by an elevated heart rate, rapid breathing, abnormal body temperature, and decreased blood pressure." *Guzman v. Mem'l Hermann Hosp. Sys.,* 637 F. Supp. 2d 464, 473 (S.D. Tex. 2009). One-third of those who contract sepsis worldwide die from it.

60. The defendants acted under the color of state law when it delayed and denied Fernando Macias medical care, without proper reason or authority, and with deliberate indifference to his rights.

61. Bexar County, their employees, and their agents failed to train on recognizing serious medical and mental health needs including sepsis and when to transport an inmate for critical time sensitive medical care. Fernando's injuries and death was a highly predictable consequence of a failure to train.

62. The lack of training or training policy showed deliberate indifference to patients' constitutionally protected rights, including Fernando.

63. They failed to adequately supervise the actions and omissions of the jail staff, officers, contractors, employees, and agents of the Bexar County Jail.

64. Sheriff Salazar, his employees, and his agents failed to train and failed to adequately supervise the actions and omissions of the jail staff, officers, contractors, employees, and agents responsible for providing medical care to the inmates at the Bexar County Jail, namely Fernando Macias.

65. While in the custody of Bexar County Jail, Fernando Macias did not receive adequate or preventive medical care to prevent the infection that resulted in sepias due to the Bexar County Jail's policies, practices, and/or customs.

66. Fernando Macias' serious medical needs were ignored due to the defendants deliberate indifference as he was denied medical care and died as a direct result of the acts and omissions of the Defendants.

67. Those acts and omissions violated Fernando Macias's constitutional right to due process to be free from unreasonable search and seizure and the privileges and immunities and rights guaranteed by the Fourth and Fourteenth Amendments, making the Defendants liable to Plaintiffs under and pursuant to 42 U.S.C. sections 1983 and 1985.

68. At all times, relevant hereto, Plaintiffs, and Fernando Macias had an inalienable and fundamental liberty interest protected by the Constitution.

69. Fernando Macias had the right to adequate medical care under the Fourth, and Fourteenth Amendments.

70. The policies and procedures of Bexar County that it adopted from medical providers at the jail, including the policy of not providing mental health care to inmates in the jail and failing to address the foreseeable risk of harm of infections and death after other jail inmates exhibited serious mental health needs. It also adopted the policy, along with the delay in providing emergency medical treatment after symptoms of a serious medical need manifested, amounting to deliberate indifference by Bexar County.

71. In addition, it failed to train medical providers, including physicians, nurses, physician assistants, advanced practice nurses, and nurses who worked at the jail to address an inmate with mental health needs.

72. During Fernando Macias's custody, Bexar County was responsible for providing medical services to the inmates housed in the jail, including Fernando Macias.

### Claim 2: Conditions Of Confinement

73. Plaintiff incorporates facts from all paragraphs stated within the complaint as fully stated in this section.

74. Fernando Macias suffered from schizoaffective disorder and documented to have altered mental status but refusing all medical interventions while in the male infirmary, nothing was done to address these issues.

75. Salazar was aware in 2018 that his jail would need to house those who suffer from various mental health conditions. The lack of policy and policy in place in 2018 ignored this known problem the jail faces daily with detainees entering the facility. The defendants engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

76. The defendants, UHS, its employees and the sheriff through those he delegated the duty of inmate care refused to treat detainees with mental health issues and ignored their complaints thereby denying medical care for detainees serious medical needs.

77. He was found with no nail beds on his left and right great toes, and raw left and right heels.

78. No jailer sought medical care for Fernando Macias, or any others that languished in the jail with serious medical mental health needs. They were left to waste away. No jailer reported any detainees obvious deterioration to Sheriff Salazar, since it was not a part of their training when a person's medical needs are being ignored.

79. The jailers did not even go so far as to refer Fernando to medical personnel, he was just ignored.

80. Between March 2018 and December 16, 2018, Defendants violated Article 16.22 of the Texas Code of Criminal Procedure, for "Early Identification of Defendant Suspected Having Mental Illness or Intellectual Disability" by failing to follow the mandatory procedures for an inmates access to mental health professionals, continuity of prescription medication requirements, mandatory training, and reporting requirements for mentally ill defendants, and pursuant to the Sandra Bland Act.

81. Defendants violated "Mental Disabilities/Suicide Prevention Plan" (adopted to be effective December 20, 1994, last revision 2018) Sec. 273.5 of the Texas Administrative Code, requiring staff training, creating and following procedures for intake screening to identify mental illness (in compliance with Tex. Code Crim. Proc. Art. 16.22), adequately providing for supervision, and verifying medical needs.

82. Defendants violated Art. 16.23 of the Tex. Code Crim. Proc., "Diversion of Persons Suffering Mental Health Crisis or Substance Abuse Issue" by delaying and denying transfer to a proper treatment facility for Fernando Macias serious mental health needs.

83. Defendants failed to "report to the Texas Correctional Office on Offenders with Medical or Mental Impairments on a jail's compliance with Article 16.22, Code of Criminal Procedure," Tex. Gov't Code, tit. 4, § 511.09(a)(17) and failing to ensure the jail adopted "reasonable rules and procedures to ensure the safety of prisoners, including rules and procedures that require a county jail to: give prisoners the ability to access a mental health professional at the jail through a telemental health service 24 hours-a-day." Tex. Gov't Code, § 511.09(a)(23)(A).

84. Defendants failed to follow procedures regarding criminal defendants who are or may be persons with a mental illness or an intellectual disability and by not obtaining a written assessment ordered by the magistrate and completed by the local MH/IDD authority or another qualified expert or followed through with recommendations.

85. The "Annual Report" for calendar year 2018 found multiple deficiencies and Defendants were advised to "promptly initiate and complete appropriate corrective measures." These deficiencies included, but not limited to, findings such as:

"Inmate classification paperwork and staff interviews indicated that jail staff routinely exceed custody reassessments are required. One file exceeded the 90-day limit by 27 days."

"The administration has employed and authorized civilian employees to perform duties of health personnel or trained booking officers which is a violation of minimum jail standards."

• "The administration was unable to provide training records to confirm that detention

13

officers received suicide prevention training in accordance with the approved operational plans."

• "Observation logs indicated that jail staff exceeded the required face-to-face 15 minute observations on a continual basis in accordance with the jails [sic] own approved operational plan."

• "Observation logs indicated that jail staff exceeded the required face-to-face 60 minute observations on a continual basis by as few as 1 minute up to 126 minutes."

• "The administration has employed and authorized civilian employees to perform duties of licensed jailers. These civilian employees are not licensed as jailers by TCOLE as required."

• "The inspection team was unable to verify, through maintained documentation, that recreation is being offered to inmates at least 3 days per week for 1 hours as required by minimum jail standards."

**Assistant Jail Administrators**

86.  From the time that Fernando entered the jail Bexar County had a turn over of three Assistant Jail Administrators. Laura Balditt served until April 2019, between April 2019 and September 2019 Bobby Hogeland served as assistant jail administrator, and from September 2019 through the time of Fernando Macias's death Ruben Vela served as assistant jail administrator. The jail administrator is the highest ranking person responsible for the daily operations of the jail, policy development, responsibility to hire jail personnel, and oversee

medical personnel. Each jail administrator Balditt, Hodeland, and Vela each failed to assure that Fernando Macias received adequate care.

### Claim 3: Failure to Supervise

87. Plaintiff incorporates facts from all paragraphs stated within the complaint as fully stated in this section.

88. The Defendants failed in their responsibility for Bexar County Jail to maintain minimum standards along with deliberate indifference in complying with minimum jail standards and regulations as a pervasive pattern and practice of failure to protect and keep detainees safe during their incarceration, and disregard for the policies and procedures required for mental health by: the lack of supervision, training, lack of reassessing inmate classification, employing unlicensed and untrained civilian employees over critical screening intake areas, and intentional circumvention of systems by employees to skip areas of required fields in the grievance tracking system.

89. Javier Salazar was the official policy-maker and was sufficiently aware that its supervision, and training policies, were defective, incomplete, or routinely ignored by his medical providers and officers (at least) to the extent that they facilitated or permitted the constitutional violations against Mr. Macias.

90. Javier Salazar failed to supervise the individual officers under his command. As Sheriff, all deputies, regional or otherwise, must report directly to Salazar. Javier Salazarfailed to properly supervise his subordinates in the proper response to his inmates' serious medical needs which led to the pain and suffering, mental anguish, and death of Fernando Macias.

91. Such lack of supervision allowed defendants to ignore Fernando Macais's serious medical needs.

92. The lack of training and supervision resulted in the failure to respond to Mr. Macias serious medical needs by failing to make their best efforts to ensure Mr. Macias's health and safety needs were met.

### Claim 4: ADA Claim

93. Each of the preceding paragraphs is herein incorporated as if restated fully. Fernando was arrested based on the manifestation of the effects of his mental illness. Upon being taken into custody not one of the defendants to measures to reasonably accommodate Fernando's known disability in the course of his custody of Bexar county. He was left without mental health care and was not treated like those with serious medical needs in the jail.  Bexar county through his employees chose to ignore requests for care made by his family members that tried to visit him.

### Claim 5: Gross Negligence

94. In the alternative to the constitutional claims, Plaintiffs bring claims for negligence against the private medical care providers University Medical Associates.

95. Each and every medical care provider had a duty of reasonable care to Fernando Macias.

96. The medical providers consciously, recklessly and voluntarily without reason disregarded their duty of reasonable care toward Fernando Macias.

### Claim 6: Survival Claim

97.     Plaintiffs incorporate facts from all paragraphs stated within the complaint as fully stated in this section.

98.     Fernando Macias was unmarried, without children and was survived by his siblings Stephen Macias, Walter Macias, Yvonne Shilling, and Fernando Macias.

99.     The heirs of Fernando Macias file this survivor action against defendants, pursuant to the Texas Survivorship Statute and assert claims that Fernando Macias would have been able to bring on his own behalf had he survived that were a result of the Defendants joint and several acts and omissions, specifically for the violation of her due process rights, and pre-death pain and suffering.

## VI.    Damages

100.    Plaintiffs incorporate by reference all preceding paragraphs of this Original Complaint as if set forth at length herein in this section.

101.    Plaintiffs experienced, and in all likelihood will experience, at least great pain and suffering in the past and in the future, great mental anguish in the past and future, loss of enjoyment of Fernando Macias's life, loss of consortium, and love and society.

102.    Plaintiffs seek exemplary damages. Plaintiffs also bring claims for violations of Fernando Macias's Fourth, and Fourteenth Amendment rights.

103.    Plaintiffs have been damaged by the loss of companionship, love and society that would have been provided by Fernando Macias but for his preventable death.

104.    Fenando Macias suffered great mental anguish and pain in the months, weeks, days, hours, and minutes before his death and such is actionable through her estate and funeral expenses are recoverable as well.

105.   Award exemplary damages to Plaintiffs. All individuals, excluding the county, sued are liable for punitive damages as they were deliberately indifferent to Fernando Macias's constitutional rights and they did the acts knowingly, such acts, including the denial and delay of medical care to Fernando Macias.

106.   These acts are extreme and outrageous and shocking to the conscious.

### VII.   Attorneys' Fees

After prevailing herein, Plaintiffs are entitled to recover reasonable and necessary attorneys' fees and costs to enforce Fernando Macias's constitutional rights under 42 U.S.C. sections 1983 and 1988 from Defendants.

### VIII.   Prayer for Relief

For the reasons set forth herein, Plaintiffs respectfully request that the Defendants be cited to appear and answer herein and that Plaintiffs have a final judgment against the Defendants, jointly and severally, for actual damages above the jurisdictional minimum of the Court, compensatory damages above the jurisdictional minimum of the Court, nominal damages above the jurisdictional minimum of the Court, mental anguish, exemplary damages as allowed by law, pre-judgment and post-judgment interest, costs of court, attorneys' fees and expenses, and all other relief to which the Plaintiff is justly entitled, at law or in equity. Plaintiffs also request this Court to enter a permanent injunction to prevent future violations of the Fourth, and Fourteenth Amendments for the claims asserted herein. Plaintiffs also request the authorization to conduct post-judgment discovery to ensure that Defendants are in compliance with a permanent injunction.

Respectfully submitted,

By: /s/ U.A. Lewis
The Lewis Law Group
U.A. Lewis
SBN: 24076511
FBN: 1645666
P.O. Box 27353
Houston, TX 77227
Phone: (713) 570-6555
Fax: (713) 581-1017
MyAttorneyAtLaw@gmail.com
Attorney for the Plaintiffs

**CERTIFICATE OF SERVICE**

I certify that on March 22, 2021, I served a true and correct copy of the proceeding Amended Complaint to all parties or counsel of record.

/s/ U.A. Lewis

U.A. Lewis