UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

STEVEN MACIAS, et al.,

    *Plaintiffs*,

v.                                                       Case No. SA-21-CV-00193-JKP

BEXAR COUNTY, et al.,

    *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion to dismiss filed by Defendants Bexar County, Sheriff Javier Salazar, and Laura Balditt (ECF No. 6). With the filing of the response and reply (ECF Nos. 7, 10), the motion is ripe for ruling. For the reasons set forth below, the Court partially grants the motion.

## I. PROCEDURAL HISTORY

Plaintiffs filed an original petition in the 131st Judicial District Court of Bexar County, on December 14, 2020 (ECF No. 1-1). Bexar County removed the lawsuit to federal court on March 1, 2021 (ECF No. 1), and filed a motion to dismiss March 08, 2021 (ECF No. 2). Plaintiffs filed an amended complaint, the live pleading, March 22, 2021 (ECF No. 3). Defendants filed the subject motion to dismiss April 05, 2021 (ECF No. 6).

## II. LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair

notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff need not plead the legal basis for a claim, the plaintiff must allege "simply, concisely, and directly events" that are sufficient to inform the defendants of the "factual basis" of a claim. *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). Furthermore, when ruling on a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8. Nevertheless, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Facts alleged in a pleading must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012). In the context of a motion to dismiss, plaintiffs carry this burden when their operative pleading alleges that (1) "defendants committed a constitutional violation under current law" and (2) "the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)).

While "formulaic recitations or bare-bones allegations will not survive a motion to dismiss," *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019), compliance with *Iqbal* and *Twombly* requires only that the *facts* plausibly allege a constitutional violation. And the Court views the actions of a defendant for objective unreasonableness as alleged in the operative pleading, not as it would on summary judgment. As the Supreme Court recognized long ago,

> the legally relevant factors bearing upon the [qualified immunity] question will be different on summary judgment than on an earlier motion to dismiss. At that earlier stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for "objective legal reasonableness." On summary judgment, however, the plaintiff can no longer rest on the pleadings, and the court looks to the evidence before it (in

3

the light most favorable to the plaintiff) when conducting the [qualified immunity] inquiry.

*Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original) (citation omitted); *accord McClendon*, 305 F.3d at 323. Naturally, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

### III. APPLICABLE LAW

**A. 42 U.S.C. § 1983**

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted). "[T]here can be no § 1983 liability unless the plaintiff has "suffered a constitutional violation . . . at the hands of . . . a state actor." *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc). Accordingly, for a § 1983 claim to survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Sanchez v. Oliver*, 995 F.3d 461, 466 (5th Cir. 2021) (quoting the same to "state a claim under § 1983").

**B. Qualified Immunity**

Qualified immunity shields government officials from § 1983 liability *unless* the defendant's actions "violated a federal statutory or constitutional right" *and* the right was "clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). Both prongs

must be satisfied to deny qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may begin the analysis at either prong. *Id.* at 236.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle*, 566 U.S. at 664). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Thus, the "Supreme Court has rejected a rigid requirement that previous cases be 'materially similar' in order for the law to be clearly established. We need not immunize an officer from suit for an obvious violation simply because no case has held that the officer's precise conduct was unlawful." *Gerhart v. McLendon*, 714 F. App'x 327, 334-35 (5th Cir. 2017) (per curiam) (citations omitted). Accordingly, a nonmovant satisfies the clearly established prong by demonstrating that "the state of the law at the time of the incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citation and internal quotation marks omitted).

## IV. FACTS ALLEGED

For the purpose of the subject motion to dismiss, the facts alleged in Plaintiffs' amended complaint (ECF No. 3) are accepted by the Court as true. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). On March 6, 2018, Walter Macias called for assistance because his brother, Fernando Macias (Fernando), was having a mental health crisis. Bexar County Sheriff's Deputies responded and a standoff between the deputies and Fernando escalated to SWAT[1] intervention. At some point after the "Texas Rangers SWAT team" relieved the Bexar County Deputies, law enforcement fired their weapons.

---

[1] SWAT: special weapons and tactics.

The gunfire injured Fernando and killed his mother, Amelia Macias.

Law enforcement arrested Fernando. University Medicine Associates and University Hospital treated Fernando's wounds. Upon release from hospital (sometime in March 2018), Fernando was booked into Bexar County Adult Detention Center (BCDC).[2] When taken into Bexar County Custody in March 2018, Fernando weighed over 300 pounds. His medical record included diagnoses of myotonic dystrophy, hypertension, hypothyroidism, and schizoaffective and delusional disorders.

In September 2018, a court found Fernando incompetent to stand trial. In November 2018, Fernando was admitted to BCDC infirmary. University Hospital admitted Fernando December 2-11, 2018. He returned to the jail infirmary December 11, 2018 and was again admitted to the hospital on December 15, 2018. When Fernando died, he weighed 196 pounds, was septic, had pressure sores, and missing nail beds on his toes.

## V. DISCUSSION

### A. Plaintiffs' Claims

The amended complaint brings the following claims:

Claim 1: 42 U.S.C. § 1983 Fourth and Fourteenth Amendment Violations (against "all defendants")

Claim 1: Delay and Denial of Medical Care (against Bexar County, Sheriff Salazar and "their employees and agents")

Claim 2: Conditions of Confinement (against "the defendants, UHS, its employees and the Sheriff through those he delegated the duty of inmate care" and the assistant jail administrators)

Claim 3: Failure to Supervise (against Sheriff Salazar)

Claim 4: ADA Claim (against Bexar County)

---

[2] Plaintiffs' complaint refers to the Detention Center as the Bexar County Jail. *See, e.g.*, ECF No. 3 ¶ 41. Defendants use the term "Bexar County Adult Detention Center." ECF No. 6 at 2.

   Claim 5: Gross Negligence (against "the private medical providers")

   Claim 6: Survival Claim

ECF No. 3 at 8-9, 11, 15-16 ¶¶ 52, 64, 76, 86, 89-90, 93-94, 97-99.

   As an initial matter, Claim 6, styled Survival Claim, relates only to the capacity in which Plaintiffs assert their other claims. It does not set forth any independent substantive claim against any Defendant. *See Pluet v. Frasier*, 355 F.3d 381, 384 (5th Cir. 2004) (discussing interaction between § 1983 and Tex. Civ. Prac. & Rem. Code § 71.021(b)); *Slack v. City of San Antonio, Texas*, No. SA-18-CV-01117-JKP-ESC, 2021 WL 3007179, at *4-5 (W.D. Tex. July 15, 2021) (discussing standing of heirs and decedent's estate in relationship to § 71.021). Defendants neither move for dismissal of Claim 6 nor challenge Plaintiffs' standing to bring this action. *See* ECF No. 6 at 19. Accordingly, Claim 6 is not at issue here. Secondly, Claim 5 is not brought against the defendants who filed the subject motion to dismiss. Claim 5 is therefore not discussed or addressed herein. Thirdly, construing the complaint in the light most favorable to the Plaintiffs and drawing all reasonable inferences in their favor, the Court cognizes the claims analyzed below. All other claims, purported or pled, are dismissed.

**B. Constitutional Rights of Pretrial Detainees**

   Fernando began his time in Bexar County custody as an arrestee, he became a pretrial detainee when he was booked into BCDC and charged with an offense, and arguably, in September 2018, when the court found him incompetent to stand trial and he was awaiting transfer to a mental health facility, his classification changed again. No matter the classification, a state actor violates the constitutional rights of a person *in custody* by acting with deliberate indifference to the person's serious medical needs. *Cope v. Cogdill*, 3 F.4th 198, 207 (5th Cir. 2021) (pretrial detainee); *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020), *cert. denied*, 141

S. Ct. 1379 (2021) (arrestee); *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (prisoner). *See also Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976); *Bell v. Wolfish*, 441 U.S. 520 (1979)).

Because Fernando had not been convicted of the crime for which he was in custody, his federal constitutional rights were protected under the Fourteenth Amendment. "The Fourteenth Amendment guarantees pretrial detainees a right not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Dyer v. Houston*, 955 F.3d 501, 506 (5th Cir. 2020). *See City of Revere v. Massachusetts Gen. Hospital*, 463 U.S. 239, 244 (1983) ("due process rights" of an unconvicted person "are at least as great as the Eighth Amendment protections available to a convicted prisoner").

**C. Claims Against Sheriff Javier Salazar and Laura Balditt**

The amended complaint alleges that Defendants Sheriff Salazar and Assistant Jail Administrator Balditt violated Fernando's constitutionally-protected rights when they were deliberately indifferent to his serious medical needs. ECF No. 3 at 9-16; *see also* ECF No. 7 ¶¶ 1-3. "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 352 n.12 (5th Cir. 2006) "A serious medical need may exist for psychological or psychiatric treatment, just as it may exist for physical ills." *Hare v. City of Corinth*, 74 F.3d 633, 642 (5th Cir. 1996). An allegation of deliberate indifference must show (1) the plaintiff's exposure to a "substantial risk of serious harm"; (2) the official's subjective awareness of the risk; and (3) disregard of the risk, such as the intentional denial, delay, or interference with a plaintiff's medical care, or conduct that evinces a wanton disregard for the plaintiff's serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 828-29, 840 (1994); *Domino v. Tex. Dep't. of*

8

*Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

To state a viable claim under § 1983, a plaintiff must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). Supervisory officials cannot be held liable for the actions of subordinates on a theory of vicarious or respondeat superior liability. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). When the plaintiff alleges "a failure to train or supervise, 'the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Id.* "'For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.*; *see also Spears v. McCraw, et al.*, No. 20-50406, ___ Fed. App'x ___, 2021 WL 3439148, at *3 (5th Cir. Aug. 5, 2021) (per curiam) (requiring "well-pled facts indicating that any defendant failed to supervise or train subordinate officers or that such a failure caused a constitutional violation" to avoid dismissal on motion to dismiss).

Plaintiffs aver that Sheriff Salazar, as policymaker, and Laura Balditt as Assistant Jail Administrator,[3] knew that the Sandra Bland Act (the "Act") applied to them and that Salazar and Balditt allowed the Act to be violated by failing to implement the Act's requirements and failing train BCDC staff in the requirements, particularly, BCDC medical providers. Plaintiffs allege that Fernando's mental health history was well documented and his mental health crisis was the

---

[3] Plaintiffs aver that the jail administrator "is the highest ranking person responsible for the daily operations of the jail, policy development, responsibility to hire jail personnel, and oversee medical personnel." ECF No. 3 ¶ 86. Plaintiffs further contend that Balditt specifically, "was responsible for the housing, food, and medical care of detainees as the assistant jail administrator." ECF No. 7 ¶ 54.

impetus for his arrest and detention, thus, Salazar and Balditt were aware that Fernando was protected by the Act and that he was in need of mental health care. Plaintiffs contend that ignoring Fernando's mental health needs and, instead, allowing him to languish—resulting in dramatic weight loss, pressure sores, missing nail beds on his toes, and ultimately, death—amounts to deliberate indifference. Plaintiffs also contend that Salazar and Balditt's refusal to provide mental health care impacted Fernando's receipt of other necessary and life-saving medical care because left untreated, his schizoaffective and delusional disorders caused him to refuse dialysis.

Effective September 1, 2017, the Sandra Bland Act amended the Texas Code of Criminal Procedure, Government Code, and Occupations Code, by providing increased protections for detainees with mental health issues. S.B. No. 1849, 85th Leg. (Tex. 2017); *see* Christopher Klement, "Sandra Bland Act," 2020 TXCLE-AGL 7-V, 2020 WL 5607001. Plaintiffs allege Fernando's arrest and detention resulted from a mental health crisis and that his mental health history was well documented. The allegation that Salazar and Balditt knew the Act's requirements allows the Court to draw the reasonable inference that these Defendants knew detainees should be evaluated for mental health care needs. The allegation that Salazar and Balditt had a policy of placing detainees on a list for a bed in a state mental hospital and then ignoring the ongoing mental health needs of these detainees, seems to run afoul of the requirements of the Act and thus is probative of deliberate indifference to the serious medical need of an individual in the midst of a mental health crisis in general, and Fernando's mental and physical health needs specifically. *Id.* The Court therefore finds that Plaintiffs' allegations meet the plausibility threshold and are sufficient to state a claim for deliberate indifference against Salazar and Balditt.

Defendants contend they are entitled to qualified immunity because Plaintiffs "fail not only to describe conduct by the individual defendants that was clearly prohibited by law, but fail

more fundamentally to describe any conduct by the individual defendants that could form the basis of a viable individual-capacity claim, show their deliberate indifference, or overcome their qualified immunity." ECF No. 6 at 20. Plaintiffs allege that Fernando's mental health issues were well documented and known by the Defendants. And the mental health crisis that precipitated his detention was so severe, the Bexar County Sheriff's Deputies determined they could not manage the call and requested assistance from the Texas Rangers SWAT team.

When taken into Bexar County custody in March 2018, Fernando weighed over 300 pounds. When he died nine months later, he weighed 196 pounds, was septic, had pressure sores, and missing nail beds on his toes. His medical record shows diagnoses of "DM2, HTN, hypothyroidism, and Schizoaffective Disorder, Delusional Disorder." ECF No. 3 at 4. When the hospital admitted Fernando the day before his death, his blood pressure was 82/53, his pulse was 40, his blood oxygen was 82 percent, his serum potassium was 6.7, and he was malnourished and suffering from dehydration. *Id.*

Plaintiffs allege that while housed at BCDC, Fernando did not receive any mental health care beyond the evaluation conducted to ascertain his competence to stand trial and placement on a list for a bed at a state mental hospital. Because his mental health went untreated, he refused and did not receive necessary dialysis treatment and "the jail did not provide any useful medical records to the hospital upon his transfer." *Id.* Plaintiffs allege that Salazar and Balditt did not train BCDC medical personnel on the requirements of the Sandra Bland Act and had no policies that ensured the provision of mental health care. Instead, Salazar and Balditt encouraged a custom of ignoring detainees' mental health care needs, as evidenced by the deaths of Janice Dotson-Stephens and others and the documented failures of BCDC to meet minimum standards.[4]

---

[4] *See, e.g., Dotson v. Bexar Cty. Hosp. Dist.*, No. SA-19-CV-00083-XR, 2019 WL 6311375, at *1 (W.D. Tex. Nov. 25, 2019); *Ule v. Bexar Cty. Hosp. Dist.*, No. SA-19-CV-01459-JKP-ESC, 2020 WL 5644882, at *3 (W.D. Tex. Sept.

Defendants argue that Fernando had the right to refuse medical treatment and that is why he did not receive dialysis. Plaintiffs contend that had Fernando received mental health care he would not have refused dialysis.

The allegations in the amended complaint thus plausibly allege that Fernando had a serious medical need; that Salazar and Balditt failed to supervise or train their subordinates; that had BCDC medical personnel been trained in the requirements of the Sandra Bland Act and had Salazar and Balditt required jail medical personnel to provide mental health care, Fernando would not have refused dialysis and his health would not have so quickly deteriorated, resulting in his death; and that wholly ignoring a detainee's health care needs amounts to deliberate indifference. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al–Kidd*, 563 U.S. 731 (2011) (internal quotations and alterations omitted). It is well-established that state officials have a duty under the Fourteenth Amendment to provide involuntarily detained persons with "basic human needs, including medical care and protection from harm." *Hare*, 74 F.3d at 650. Thus, a pretrial detainee has a clearly established right not to be denied, by deliberate indifference, attention to his serious medical needs. Therefore, the Court finds Plaintiffs' allegations against Salazar and Balditt are sufficient to avoid qualified immunity dismissal under Rule 12(b)(6). Defendants may re-urge their qualified immunity defense at summary judgment. *See McGee v. Carrillo*, 297 F. App'x. 319, 321-22 (5th Cir. 2008) (denial of motion to dismiss on qualified immunity does not preclude resolution of qualified immunity on summary judgment).

---

22, 2020); Jackie Wang, *Deaths in Bexar County Jail Raise Questions About Facility's Operations*, San Antonio Report, Aug. 12, 2019, https://sanantonioreport.org/another-death-in-bexar-county-jail-raises-questions-about-jail-operations/.

**D. Claims Against Bexar County**

A local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("local governments are responsible only for their own illegal acts"). To state a claim arising from the execution of an entity's policy or custom, a plaintiff must set forth factual allegations to show "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

> A policy may be evidenced by a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.

*Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir. 2021) (per curiam) (internal quotations omitted) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc))). "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Id.* (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010)). "To plausibly plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to his injury." *Id.* (quoting *Peña v. City of Rio*

13

*Grande*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011))). "A pattern requires similarity and specificity, as well as 'sufficiently numerous prior incidents' as opposed to 'isolated instances.'" *Id.* (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989))). The "occasional acts of untrained policemen are not otherwise attributed to city policy or custom." *Id.* (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)).

"To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff [first] must establish that he possessed a constitutional right of which he was deprived." *City of Canton v. Harris,* 489 U.S. 378, 389 (1989). "Where there is no underlying constitutional violation, there can be no municipal liability." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). As discussed above, Plaintiffs have pled a constitutional violation of Fernando's Fourteenth Amendment right to not have his serious medical needs met with deliberate indifference.

"The County can be responsible for actions of a final policymaker who has 'the responsibility for making law or setting policy in any given area of a local government's business.'" *Culbertson v. Lykos*, 790 F.3d 608, 624 (5th Cir. 2015) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988)). "[T]he identity of the policymaker is a question of law, not of fact—specifically, a question of state law." *Groden v. City of Dallas, Tex.*, 826 F.3d 280, 284 (5th Cir. 2016). "[I]n Texas, the county sheriff is the county's final policymaker in the area of law enforcement, not by virtue of delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected." *Turner v. Upton County, Tex*. 915 F.2d 133, 136 (5th Cir. 1990). *See also Colle v. Brazos County, Tex.*, 981 F.2d 237, 244 (5th Cir. 1993) (explaining that the sheriff "clearly set the goals for the county and determined how those goals

would be achieved"). The Bexar County Adult Detention Center falls within the purview of the Bexar County Sheriff. Therefore, Sheriff Salazar was the policymaker for BCDC at the time of the violations alleged in the amended complaint.

**1. Failure to Train**

"To state a cognizable failure-to-train claim, a plaintiff must plead facts plausibly demonstrating that: (1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the constitutional violations in question." *Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir. 2021) (per curiam) (citing *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753 (5th Cir. 2009)). A failure to train claim "must identify the policy, connect the policy to the city itself[,] and show that the particular injury was incurred because of the execution of that policy." *Vega v. Cameron Cty., Texas*, 856 F. App'x 532, 533 (5th Cir. 2021) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc).

As shown above, Plaintiffs adequately allege facts to show that Sheriff Salazar, as the policymaker, failed to establish any training procedures with respect to mental health care provisions or the requirements of the Sandra Bland Act and its progeny. Plaintiffs allege that Fernando and other BCDC detainees' deaths can be traced to a failure to provide mental health care and a failure to subscribe to the edicts of the Sandra Bland Act, by failing to train jail personnel in its requirements. Thus, Plaintiffs have alleged a failure to train claim against Bexar County sufficient to survive the motion to dismiss. To the extent this claim is brought against both Bexar County and Sheriff Salazar, it is redundant. Thus, this claim proceeds against Bexar County only. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, . . . local government

units can be sued directly for damages and injunctive or declaratory relief."); *McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997) (a suit against a governmental officer in his official capacity is in effect a suit against the entity the officer represents).

## 2. Conditions of Confinement

While medical care claims are typically brought as episodic-acts-or-omissions claims, a plaintiff may assert a conditions-of-confinement claim based on injuries suffered as a result of not receiving proper medical attention due to a jail or detention center's system of providing or failing to provide medical care to detainees. "[T]here is no rule barring a plaintiff from pleading both alternative theories, and a court may properly evaluate each separately." *Henson*, 795 F.3d at 464; *accord Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 242 (5th Cir. 2021) (per curiam) (citing *Shepherd v. Dall. Cty.*, 591 F.3d 445, 452 n.1 (5th Cir. 2009)). A conditions of confinement claim is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc); *see also Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 462 (5th Cir. 2015).

A conditions of confinement claim capable of surviving a motion to dismiss alleges: (1) "a rule or restriction or . . . the existence of an identifiable intended condition or practice . . . [or] that the jail official's acts or omissions were sufficiently extended or pervasive"; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [the inmate's] constitutional rights. *Duvall v. Dall. Cty. Tex.*, 631 F.3d 203, 207 (5th Cir. 2011) (quoting *Hare*, 74 F.3d at 645); *Sanchez v. Young Cty., Texas*, 956 F.3d 785, 791 (5th Cir.), *cert. denied*, 141 S. Ct. 901 (2020). A plaintiff need not prove that another detainee suffered the same fate as a result of a custom or policy, but "isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate."

*Montano v. Orange County*, 842 F.3d 865 (5th Cir. 2016).

A condition may be expressed by an explicit policy or an unstated or *de facto* policy. *See Scott v. Moore*, 114 F.3d 51, 53 n.2 (5th Cir. 1997) (en banc) (listing cases deemed to be conditions of confinement cases). An unstated or *de facto* policy, may be evidenced by a pattern of acts or omissions "sufficiently extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice." *Hare*, 74 F.3d at 645. A *de facto* policy may be demonstrated through evidence such as commissioned reports, consistent employee testimony, and "other documentary evidence indicating inmates received 'grossly inadequate' treatment." *Montano*, 842 F.3d at 875. A constitutional violation is alleged where the facts show that "the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective." *Scott*, 114 F.3d at 53.

When a plaintiff is challenging a condition of confinement, [the Fifth Circuit] applies the test established by the Supreme Court in *Bell v. Wolfish,* and asks whether the condition is "reasonably related to a legitimate governmental objective." *Martinez*, 846 F. App'x at 242 (citing *Hare*, 74 F.3d at 646; *Wolfish*, 441 U.S. at 539). "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* (quoting *Wolfish*, 441 U.S. at 539). Because "a State's imposition of a rule or restriction during pretrial confinement manifests an avowed intent to subject a pretrial detainee to that rule or restriction," the plaintiff need not demonstrate that the state actor or municipal entity acted with intent to punish. *Id.* (quoting *Hare*, 74 F.3d at 644). Thus, "a true jail condition case starts with the assumption that the State intended to cause the pretrial detainee's alleged constitutional deprivation." *Id.* (quoting *Hare*, 74 F.3d at 644–45).

17

According to Plaintiffs, Defendants Bexar County and Sheriff Salazar do not "follow the mandatory procedures for an inmates access to mental health professionals, continuity of prescription medication requirements, mandatory training, and reporting requirements for mentally ill defendants" required by law. ECF No. 3 ¶¶ 81-84 (citing Tex. Code Crim. Pro. Art. 16.22 & 16.23; 37; Tex. Admin. Code §§ 267, 271, 273, 275; 4 Tex. Gov't Code §§ 511.09(a)(17) & 511.09(a)(23)(A); and the Sandra Bland Act). Plaintiffs allege that Defendants' *de facto* policy of ignoring the mental health care needs of BCDC detainees is evidenced by a documented pattern and practice of noncompliance with standards set by the Commission on Jail Standards, including the deaths of six BCDC detainees between January 19, 2018 and February 22, 2019 and the Texas Commission's 2018 report, identifying areas of noncompliance within BCDC, including, inter alia, employing civilians to perform duties of health personnel, failing to timely reassess inmate classification, and failing to conduct face-to-face observation of each detainee within the mandated time frames. Plaintiffs also allege that Sheriff Salazar was responsible for the medical care of BCDC detainees, that he knew Fernando suffered from schizoaffective disorder and delusional disorder and that Fernando required dialysis to survive and that BCDC medical personnel ignored his symptoms, did nothing to address his mental health needs, which were impacting his ability to consent to dialysis, and provided no medical care even though Fernando presented to the BCDC clinic, and as a result Fernando lost over 100 pounds in eight months and ultimately died from complications due to sepsis.

A *de facto* policy that denies a pretrial detainee medical care and serves no legitimate governmental interest "transgresses the substantive limits on state action set by . . . the Due Process Clause." *Montano*, 842 F.3d at 878 (citing *Shepherd*, 591 F.3d at 453–54). Plaintiffs have alleged facts stating a conditions of confinement claim sufficient to survive the motion to dismiss.

18

To the extent this claim is brought against both Bexar County and Sheriff Salazar, it is redundant. Thus, this claim proceeds against Bexar County only.

### 3. Americans with Disabilities Act

Medical care in detention facilities "is one of the 'services, programs, or activities' covered by the ADA." *Kiman v. New Hampshire Dept. of Corrs.*, 451 F.3d 274, 284 (1st Cir. 2006), *citing United States v. Georgia*, 546 U.S. 151 (2006).

> A plaintiff must first establish a prima facie case of discrimination before relief under the ADA can be considered. To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.
>
> The prima facie case of discrimination under the Rehabilitation Act is operationally identical to the test under the ADA, requiring a plaintiff to allege: (1) the existence of a program or activity within the state which receives federal financial assistance; (2) the plaintiff is an intended beneficiary of the federal assistance; and (3) *the plaintiff is a qualified handicapped person, who solely by the reason of her handicap has been excluded from participation in, been denied benefits from, or otherwise has been subject to discrimination under such program or activity*.

*Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72, 676 n.8 (5th Cir. 2004) (emphasis in original) (citations omitted).

As shown above, Plaintiffs adequately allege facts to show that Fernando was disabled by his mental illness, that the Defendants, specifically Sheriff Salazar, knew of his disability, and that BCDC failed to provide mental health care during his detention. Thus, Plaintiffs have alleged a disability discrimination claim sufficient to survive the motion to dismiss.

## VI. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants Bexar County, Sheriff Javier Salazar, and Laura Balditt's motion to dismiss (ECF No. 6). The following claims shall proceed:

1. Individual deliberate indifference claims against Sheriff Javier Salazar and Laura Balditt.

2. The failure to train, conditions of confinement, and ADA claims against Bexar County.

All other claims against Sheriff Javier Salazar, Laura Balditt, and Bexar County are dismissed with prejudice.

**It is so ORDERED this 25th day of October 2021.**

_____
**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**