UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**STEVEN MACIAS, HEIRS OF FERNANDO MACIAS AND REPRESENTATIVE OF THE ESTATE OF FERNANDO MACIAS; YVONNE SHILLING, HEIRS OF FERNANDO MACIAS AND REPRESENTATIVE OF THE ESTATE OF FERNANDO MACIAS; AND WALTER MACIAS, HEIRS OF FERNANDO MACIAS AND REPRESENTATIVE OF THE ESTATE OF FERNANDO MACIAS;**

   *Plaintiffs*,

**v.**

**BEXAR COUNTY,**

   *Defendant*.

Case No.  SA-21-CV-00193-JKP

## MEMORANDUM OPINION AND ORDER

Before the Court are cross motions for summary judgment filed by the parties, Defendant Bexar County and Plaintiffs Macias, et al. *See* ECF Nos. 98, 96. The parties filed responsive briefings and the motions are now ripe for ruling. *See* ECF Nos. 101, 104, 105, 106, 108. After due consideration of the parties' briefings, the record evidence, and the applicable law, the Court finds the Macias plaintiffs failed to meet their summary judgment burden to show a genuine dispute of material fact on all of the remaining claims. Accordingly, the Court **GRANTS** Bexar County's Motion for Summary Judgment, **DENIES** the Macias plaintiffs' Motion for Summary Judgment, and **DISMISSES** this case with prejudice. *See* ECF Nos. 98, 96. The Court further **DENIES AS MOOT** the Macias plaintiffs' earlier filed Motion for Summary Judgment. *See* ECF No. 95. Final judgment will be entered by separate order.

## BACKGROUND

This case arises from the December 16, 2018 death of Fernando Macias, who succumbed to multiple medical conditions while in Bexar County custody. Macias was arrested on March 6, 2018 following a standoff with police. Macias' brother called police earlier that day requesting assistance because Macias was experiencing a mental health crisis. When police arrived on the scene, Macias refused to leave the house and shot at officers. The police fired back, injuring Macias and killing his mother, who was in the house with Macias during the standoff. Law enforcement was eventually able to detain Macias, and he was transported to University Hospital to be treated for wounds he sustained in the standoff. Upon release from the hospital, Macias was booked at the Bexar County Adult Detention Center.

When taken into Bexar County custody, Macias weighed over 300 pounds and suffered from multiple medical conditions, including chronic kidney disease, diabetes, myotonic dystrophy, hypertension, hypothyroidism, and schizoaffective and delusional disorders. He had a history of denying dialysis treatment for kidney disease. On June 7, 2018, Macias' criminal defense attorney filed a motion for psychiatric evaluation and the court found Macias incompetent to stand trial. The presiding criminal magistrate judge ordered that Macias to be transferred to North Texas State Hospital, but there were no beds available and the waitlist was approximately a year long. Macias was therefore returned to Bexar County custody, where he was admitted to the jail infirmary.

On November 6, 2018, Macias was transported to University Hospital because he was suffering from an altered mental state. He received treatment and was returned the jail infirmary. On November 15, 2018, Macias was again admitted to University Hospital, this time for an altered mental state and end stage renal disease. The treating physician noted Macias refused

dialysis, likely only had a few days left to live, and had signed an advance directive in 2016 indicating, in the event of his incapacity, he wished to receive comfort care only. Macias returned to the jail infirmary on December 11, 2018. Five days later, on December 16, 2018, he was again transferred to the University Hospital, where he died later that day. When Macias died, he weighed 196 pounds, was septic, had pressure sores, and was missing nail beds on his toes.

Macias' surviving family members brought this lawsuit in state court, individually and on behalf of his estate, on December 14, 2020, alleging Macias died while in Bexar County custody because he was denied adequate medical care. *See* ECF No. 1. Specifically, they allege Bexar County failed to treat Macias' mental health condition and, as a result, Macias' deteriorating mental capacity and mental illness caused him to refuse dialysis and other potentially lifesaving medical care, resulting in his death. *Id*. On February 4, 2021, the defendants removed the action to federal court. *Id*. On March 22, 2021, the Macias plaintiffs filed an amended complaint, which is the live pleading. *See* ECF No. 3.

The complaint lists as defendants Bexar County, Bexar County Hospital District, University Medical Associates, Sheriff Javier Salazar, Jail Administrators Laura Balditt, Bobby Hogeland, Ruben Vela, and John Does 1 through 5. *Id*. Defendants Bexar County, Salazar, and Balditt filed a motion to dismiss, which the Court granted in part and denied in part. *See* ECF Nos. 6, 25. Defendants Salazar and Balditt filed an interlocutory appeal, seeking Fifth Circuit review of the Court's denial of qualified immunity, and the Fifth Circuit reversed the Court, dismissing Salazar and Balditt. *See* ECF No. 34. Defendant Bexar County Hospital District also filed a motion to dismiss, which the Court granted as unopposed. *See* ECF Nos. 22, 23, 27. Defendants Bobby Hogeland, Ruben Vela, and John Does 1 through 5 were never served, so the Court dismissed them. *See* ECF No. 41. University Medical Associates was also never served;

the Macias plaintiffs requested leave to serve University Medical Associates, but the Court denied the request as untimely. *See* ECF Nos. 77, 84. Consequently, Bexar County is the only remaining defendant.

Following the Court's ruling on Bexar County's motion to dismiss, three claims survive: (1) a § 1983 claim based on conditions of confinement; (2) a § 1983 claim for failure to train; and (3) an Americans with Disabilities Act claim. *See* ECF No. 25. With its Motion for Summary Judgment, Bexar County argues the remaining claims should be dismissed on summary judgment because the record evidence shows no genuine dispute of material fact remains as to each of the remaining claims. For the reasons discussed herein, the Court agrees.

## LEGAL STANDARD

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[1] "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

---

[1] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.)

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by demonstrating the absence of facts supporting specific elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n.16 (5th Cir. 1994).

To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; *Rodriguez*, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014). To be entitled to summary judgment on its own cause of action, a plaintiff must show there is no genuine dispute of material fact and establish each element of its cause of action as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2 1190, 1194 (5th Cir. 1986).

A court may not grant summary judgment by default should the nonmovant fail to respond. *Eversley v. MBank of Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985); *Bradley v. Chevron U.S.A., Inc.*, No. Civ.A. 204CV092J, 2004 WL 2847463, *1 (N.D.Tex. Dec. 10, 2004). In this event, the Court must review the summary judgment motion to determine whether the movant satisfied its summary judgment burden and thereby shifted the burden. *See Austin v. Kroger Texas, L.P.*, 864 F. 3d 326, 335 (5th Cir. 2017).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586–87; *see also* Fed. R. Civ. P. 56(c). Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). Further, should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music, Inc. v. Bentley*, SA-16-CV-394, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

# ANALYSIS

The Macias plaintiffs have three remaining claims against Bexar County: (1) a § 1983 claim based on conditions of confinement; (2) a § 1983 claim for failure to train; and (3) an ADA claim. *See* ECF No. 3. Bexar County argues the remaining claims should be dismissed because the record evidence shows no a genuine dispute of material fact remains. The Court will first address the § 1983 claims together and then will turn its attention to the ADA claim.

## I.   Section 1983

The Macias plaintiffs assert claims against Bexar County under 42 U.S.C. § 1983 based on allegedly unconstitutional conditions of confinement and the municipality's alleged failure to train its employees. "Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted). "[T]here can be no § 1983 liability unless the plaintiff has suffered a constitutional violation … at the hands of … a state actor." *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc). Under § 1983, a municipality is responsible only for its own illegal acts and cannot be held liable on a *respondeat superior* theory of recovery. *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691, 694 (1978). Consequently, when a plaintiff asserts a § 1983 cause of action against a municipality, the alleged deprivation of constitutional rights must be connected to an official custom, policy, practice, ordinance, or regulation. *Monell*, 436 U.S. at 690–94; *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012); *Flores v. Cameron County*, 92 F.3d 258, 263 (5th Cir. 1996). Thus, to establish municipal liability, a plaintiff must prove: (1) a policy or custom existed; (2) the governmental

7

policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred by a person acting under the color of state law; and (4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. G.B. Gunn*, 81 F.3d 521, 532–33 (5th Cir. 1996).

Official policy usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Olson as Next Friend of H.J. v. City of Burnet*, 20-CV-00162, 2020 WL 9076545, at *3 (W.D. Tex. July 17, 2020). A policy is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy. *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009). "Acts of *omission,* as well as *commission,* may serve as a predicate for finding a policy or custom." *Batiste v. City of Beaumont*, 421 F.Supp.2d 969, 987 (E.D. Tex. 2005) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 463 (5th Cir. 1994)) (emphasis in original). The official policy itself must be unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result. *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016). Municipalities may also be held directly liable for failure to train, supervise, or discipline employees when such failure demonstrates "deliberate indifference" to the rights of the municipality's inhabitants. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).

In this case, Bexar County argues it cannot be held liable under § 1983 because the record evidence shows no underlying constitutional violation occurred. Indeed, "[t]o impose liability on a local governmental entity for failing to act to preserve constitutional rights, a

section 1983 plaintiff [first] must establish that he possessed a constitutional right of which he was deprived." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). "Where there is no underlying constitutional violation, there can be no municipal liability." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). The Macias plaintiffs concede that Macias' deteriorating condition and death were a result of his own refusal to accept treatment for his chronic conditions. *See* ECF No. 3 at 2, 6. This concession alone may be sufficient for the Court to enter judgment in favor of Bexar County as a matter of law because, as the Fifth Circuit noted in its decision overruling the Court's denial of qualified immunity for Defendants Salazar and Balditt, the defendants were under no obligation to force Macias to accept lifesaving medical care. *See Macias v. Salazar*, 2022 WL 3044654, at *3 (5th Cir. 2022). The Fifth Circuit noted "the absence of even a single case constitutionally requiring the imposition of medical care or location of a surrogate in this or any similar context…." *Id*. (quoting *Thompson v. Upshur County*, 245 F.3d 447, 462 (5th Cir. 2001)). The Fifth Circuit further noted the lack of authority saying a jailer "must either force a conscious, incompetent, but clearly refusing inmate to undergo medical treatment or seek a surrogate decision-maker for the same." *Id*. (quoting *Thompson* at 460). Adding, "[n]either is there any statutory duty [under Texas law] to impose medical care or locate a surrogate in these or similar circumstances." *Id*. (quoting *Thompson* at 461).[2] The Macias plaintiffs suggest the Fifth Circuit's analysis of Defendants Salazar and Balditt's qualified immunity defense is inapplicable here because Bexar County is ineligible for qualified immunity. However, the Fifth Circuit's analysis does apply in light of longstanding authority providing a municipality such as Bexar County cannot be held liable under § 1983

---

[2] In support of their conditions of confinement claim, the Macias plaintiffs allege Bexar County violated Texas law. *See* ECF No. 3 at 12–13. Bexar County's motion includes a detailed explanation of why the Texas laws plaintiffs cite do not apply in this case. *See* ECF No. 98 at 13–25. The Macias plaintiffs' reply does not address Bexar County's arguments for why the Texas laws do not apply; therefore, the Court considers the Texas law claims to be abandoned. *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).

where no constitutional violation occurred. *See City of Los Angeles v. Heller*, 475 U.S. at 799. Under Fifth Circuit caselaw, no constitutional violation arises from a municipality's refusal to impose medical care on an inmate who is clearly refusing medical care. *See Thompson v. Upshur County*, 245 F.3d at 462.

Bexar County, therefore, meets its summary judgment burden by showing no genuine dispute of fact as to whether Macias refused to accept medical care. To support its position, Bexar County provides a copy of Macias' December 26, 2016 advance directive indicating that if he were unable to make medical decisions about himself because of illness or injury, he would decline all treatments, including life-sustaining treatment, except treatment necessary to keep him comfortable. *See* ECF No. 98-1. Furthermore, Bexar County cites healthcare providers' notes from two months before Macias' death indicating Macias, who suffered from end stage renal disease, had been "refusing dialysis for over a year." *See* ECF No. 98-2 at 0732. The Macias plaintiffs object to these exhibits, arguing they are not properly authenticated, and healthcare providers' statements contained in Macias' medical records are inadmissible hearsay. As Bexar County notes, however, both documents are authenticated by the affidavit of Brenda J. Gutierrez. *See* ECF No. 97-18 (filed under seal). Furthermore, statements in Macias' medical records would be admissible under the business records and medical diagnosis or treatment exceptions to the hearsay rule. *See* Fed. R. Evid. 803(4), (6)(B). The Court, accordingly, overrules the Macias plaintiffs' objections to these exhibits and relies on the advance directive and medical records because they would be admissible at trial. *See* Fed. R. Civ. P. 56(c). Based on these documents, the Court finds Bexar County has met its summary judgment burden to show there is no genuine dispute of fact as to Macias' refusal to accept medical care. Macias'

10

refusal to accept medical care is material because Bexar County was not under any constitutional obligation to provide care Macias refused.

The burden now shifts to the Macias plaintiffs to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586–87; *see also* Fed. R. Civ. P. 56(c). The Macias plaintiffs make no effort to refute Bexar County's assertion that Macias refused medical care—indeed, they concede the point in their complaint. *See* ECF No. 3 at 2, 6. The Macias plaintiffs argue Macias would have accepted lifesaving medical care if he had been provided mental health care; however, as the record evidence shows, and the Macias plaintiffs concede in their complaint, Macias did receive mental health care while in Bexar County custody. *See e.g.* ECF No. 98-2 at 0768–0770 (referencing psychiatry consult); *see also* ECF No. 108 at 13 (citing references to mental health care Macias received while in Bexar County custody); *see also* ECF No. 3 at 4 (amended complaint, acknowledging Macias received mental health care). The Court, therefore, finds Bexar County did not violate Macias' constitutional rights in declining to administer medical care that Macias refused to accept. This alone is sufficient for the Court to grant summary judgment in favor of Bexar County on the Macias plaintiffs' § 1983 claims; however, in the interest of being thorough, the Court will also analyze the Macias plaintiffs' specific § 1983 claims separately.

### A. Conditions of Confinement

The Macias plaintiffs allege Bexar County adopted an unconstitutional policy or practice of refusing to treat mentally ill detainees, thereby denying mentally ill detainees access to medical care for serious medical needs. *See* ECF No. 3 at 12, 13. Macias was never convicted of the crime for which he was in custody, so he is treated as a "pretrial detainee" for the purpose of analyzing his constitutional rights. The constitutional rights of a pretrial detainee flow from both

the procedural and substantive due process guarantees of the Fourteenth Amendment, *see Bell v. Wolfish*, 441 U.S. 520, 535 (1979), which provides that no state shall "deprive any person of life, liberty, or property, without due process of law…." U.S. Const. amend. XIV, § 5. These protections, whether procedural or substantive, are not triggered, however, by negligent inaction. *See Davidson v. Cannon*, 474 U.S. 344, 348 (1986). In the Fifth Circuit, courts assess constitutional challenges by pretrial detainees by first deciding whether to classify the "challenge as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (citing *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997) (en banc)). The former category would include such claims as "where a detainee complains of the number of bunks in a cell or his television or mail privileges." *Id*. The latter category occurs "where the complained-of harm is a particular act or omission of one or more officials." *Id*. The Macias plaintiffs assert a "condition of confinement" claim.

A condition of confinement case may be expressed by an explicit policy or an unstated or *de facto* policy. *See Scott v. Moore*, 114 F.3d at 53 n.2. An unstated or *de facto* policy may be evidenced by a pattern of acts or omissions "sufficiently extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice." *Hare v. City of Corinth*, 74 F.3d at 645. A *de facto* policy may be demonstrated through evidence such as commissioned reports, consistent employee testimony, and "other documentary evidence indicating inmates received 'grossly inadequate' treatment." *Montano v. Orange County*, 842 F.3d 865, 875 (5th Cir. 2016). A constitutional violation can only be found where "the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective." *Scott v. Moore*, 114 F.3d at 53.

When a plaintiff challenges a condition of confinement, the Fifth Circuit applies the test established by the Supreme Court in *Bell v. Wolfish*, asking whether the condition is "reasonably related to a legitimate governmental objective." *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 242 (5th Cir. 2021) (per curiam) (citing *Hare v. City of Corinth*, 74 F.3d at 646; *Bell v. Wolfish*, 441 U.S. at 539). "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id*. (quoting *Bell v. Wolfish*, 441 U.S. at 539). Because "a State's imposition of a rule or restriction during pretrial confinement manifests an avowed intent to subject a pretrial detainee to that rule or restriction," the plaintiff need not demonstrate that the state actor or municipal entity acted with intent to punish. *Id*. (quoting *Hare v. City of Corinth*, 74 F.3d at 644). Thus, "a true jail condition case starts with the assumption that the State intended to cause the pretrial detainee's alleged constitutional deprivation." *Id*. (quoting *Hare v. City of Corinth*, 74 F.3d at 644–45).

Here, Bexar County argues Macias' deteriorating condition and death were not the result of any unconstitutional policy or practice of Bexar County, but rather Macias' own refusal to accept potentially lifesaving medical care. For the reasons discussed above, the Court finds Bexar County met its summary judgment burden to show, based on Macias' advance directive and medical records, that Macias refused to accept potentially lifesaving medical care. The burden now shifts to the Macias plaintiffs to present competent summary judgment evidence showing Bexar County's unconstitutional policy or practice resulted in Macias being denied medical care. The Macias plaintiffs attempt to support their claim by asserting Bexar County is responsible for over 70 inmate deaths due to its failure to provide adequate mental health care to

13

inmates with serious mental health needs, citing generally to "Exh. E" and plaintiffs' proposed second amended complaint. *See* ECF No. 105 at 32–33. As an initial matter, the Macias plaintiffs' vague citation to "Exh. E," without listing specific page numbers, falls short of the citation requirements set forth in Fed. R. Civ. P. 56(c)(1)(A), which requires parties to cite "particular parts" of the record to support their position. The Court has no duty to search the record for material fact issues or to find the plaintiffs' ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d at 651. Furthermore, the plaintiffs' second amended complaint was stricken by the Court, so their reliance on it is inappropriate. *See* ECF No. 84.

In any event, even if the Macias plaintiffs offered competent summary judgment evidence showing 70 mentally ill inmates died in Bexar County custody, that evidence would be insufficient to meet their summary judgment burden. Proving a pattern for the purposes of establishing § 1983 municipal liability "is a heavy burden, one that has rarely been met in [Fifth Circuit] caselaw." *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009). "A pattern requires similarity and specificity; prior indications cannot simply be for any and all 'bad' or otherwise unwise acts, but rather must point to the specific violation in question." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009). The Macias plaintiffs offer no evidence showing the 70 inmate deaths were caused by Bexar County's pattern of denying medical care to mentally ill detainees. The Court, therefore, finds the Macias plaintiffs failed to meet their burden to present competent summary judgment evidence showing Bexar County's unconstitutional policy or practice resulted in Macias being denied medical care and their conditions of confinement claim is dismissed.

### B. Failure to Train

The Macias plaintiffs also allege Bexar County failed to train their employees to properly treat mentally ill detainees. Municipalities may be held directly liable for failure to train, supervise, or discipline employees "when the municipality's failure shows a deliberate indifference to the rights of its inhabitants." *Sanders-Burns v. City of Plano*, 594 F.3d at 381. Deliberate indifference requires more than mere negligence. *Id*. A plaintiff must establish that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id*. Deliberate indifference is difficult to base on a single incident. *Id*. "Claims of inadequate training generally require that the plaintiff demonstrate a pattern." *Id*. Moreover, the previous acts must be "fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party." *Id*. *Monell* plaintiffs must also establish both the causal link ("moving force") and the municipality's degree of culpability ("deliberate indifference" to federally protected rights). *Piotrowski v. City of Houston*, 237 F.3d 567 at 580.

To prevail on a failure-to-train claim, a plaintiff must establish the following elements: "(1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the constitutional violations in question." *Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir. 2021) (per curiam) (citing *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753 (5th Cir. 2009)). Here again, Bexar County meets its summary judgment burden by offering evidence that no constitutional violation occurred because Macias

15

refused to accept medical care. The Macias plaintiffs respond by suggesting Bexar County improperly tasked civilian employees who lacked medical training with making decisions about detainees' mental health care. Such bare allegations, without more, are insufficient to meet the plaintiffs' summary judgment burden. The Court, therefore, finds dismissal of the Macias plaintiffs' failure to train claim is proper.

## II.  ADA

The Macias plaintiffs also seek recovery for discrimination on the basis of disability under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prove a public program or service violates the ADA, a plaintiff must show: (1) the plaintiff is a qualified individual within the meaning of the ADA; (2) the plaintiff is being excluded from participation in, or being denied benefits of services for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of the plaintiff's disability. *Martinez v. City of N. Richland Hills*, No. 20-10521, 2021 WL 742662, at *6 (5th Cir. Feb. 25, 2021) (citing *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).

The parties do not dispute that Macias, who suffered from multiple diagnosed mental health disorders, was a person with a disability within the meaning of the ADA. Bexar County argues, however, that the record evidence does not support the second element of an ADA claim: that Macias was excluded from participation in, or denied benefits of services for which Bexar County is responsible. Here, Bexar County points to the same record evidence offered in support

16

of its motion for summary judgment on plaintiffs' § 1983 claims—namely, that Macias was offered and received adequate medical care and, where he did not receive care, it was due to his own refusal to accept care. In response, plaintiffs suggest Macias did not receive "a single treatment" for his mental health disorders. *See* ECF No. 105 at 40. This statement is not supported by the record evidence, which, as established above, references multiple instances of Macias receiving mental health care. *See e.g.* ECF No. 98-2 at 0768–0770 (referencing psychiatry consult); *see also* ECF No. 108 at 13 (citing references to mental health care Macias received while in Bexar County custody); *see also* ECF No. 3 at 4 (amended complaint, acknowledging Macias received mental health care).

Furthermore, as Bexar County points out, even if the record contained evidence showed Bexar County denied Macias mental health care, such denial would be insufficient to support plaintiffs' ADA claim. To sustain an ADA claim, plaintiffs must show, under the third element, Macias was denied mental health care "by reason of" his disability. 42 U.S.C. § 12132. Here, the record evidence shows Macias refused medical care of his own volition. The Court, therefore, finds the Macias plaintiffs failed to meet their summary judgment burden and dismissal of their ADA claim is proper.

## CONCLUSION

For the reasons discussed, the Court finds the Macias plaintiffs failed to meet their summary judgment burden to establish a genuine dispute of material fact as to any of the remaining claims and Bexar County is therefore entitled to judgment as a matter of law. Accordingly, the Court grants Bexar County's Motion for Summary Judgment, denies the Macias plaintiffs' Motion for Summary Judgment, and dismisses this case with prejudice.

**IT IS THEREFORE ORDERED THAT** Bexar County's Motion for Summary Judgment is **GRANTED**. *See* ECF No. 98.

**IT IS FURTHER ORDERED THAT** the Macias plaintiffs' Motion for Summary Judgment is **DENIED**. *See* ECF No. 96.

**IT IS FURTHER ORDERED THAT** the Macias plaintiffs' earlier filed Motion for Summary Judgment is **DENIED AS MOOT** because the later filed motion replaced it. *See* ECF No. 95.

**IT IS FINALLY ORDERED THAT** this case is **DISMISSED WITH PREJUDICE**. Final judgment will be entered by separate order.

Bexar County requests costs and any other relief to which it is entitled. Rule 54(d) of the Federal Rules of Civil Procedure governs costs. Consistent with Rule 54(d)(1) the Court will award costs to the Defendant upon the Defendant's filing, within fourteen days of the judgment, of a Bill of Costs in the form required by the Clerk of Court. *See* Local Rule CV-54.

It is so ORDERED.
SIGNED this 18th day of March, 2024.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE