

# United States Court of Appeals
# for the Fifth Circuit

Certified as a true copy and issued
as the mandate on Aug 15, 2025

Attest:
*Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

No. 24-50603

United States Court of Appeals
Fifth Circuit

**FILED**
June 6, 2025

Lyle W. Cayce
Clerk

STEVEN MACIAS, *Heirs of Fernando Macias and Representative of the Estate of Fernando Macias*; YVONNE SHILLING, *Heirs of Fernando Macias and Representative of the Estate of Fernando Macias*; WALTER MACIAS, *Heirs of Fernando Macias and Representative of the Estate of Fernando Macias*,

*Plaintiffs—Appellants,*

*versus*

BEXAR COUNTY; UNIVERSITY HOSPITAL; UNIVERSITY HEALTH SYSTEMS OF TEXAS, INCORPORATED., *doing business as* UNIVERSITY MEDICAL ASSOCIATES; UNIVERSITY MEDICAL ASSOCIATES,

*Defendants—Appellees.*

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-193

---

Before STEWART, DENNIS, and HAYNES, *Circuit Judges.*

JUDGMENT

This cause was considered on the record on appeal and the briefs on file.

No. 24-50603

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

The judgment or mandate of this court shall issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. See Fed. R. App. P. 41(b). The court may shorten or extend the time by order. See 5th Cir. R. 41 I.O.P.

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 6, 2025

Lyle W. Cayce
Clerk

No. 24-50603

---

STEVEN MACIAS, *Heirs of Fernando Macias and Representative of the Estate of Fernando Macias*; YVONNE SHILLING, *Heirs of Fernando Macias and Representative of the Estate of Fernando Macias*; WALTER MACIAS, *Heirs of Fernando Macias and Representative of the Estate of Fernando Macias*,

*Plaintiffs—Appellants,*

*versus*

BEXAR COUNTY; UNIVERSITY HOSPITAL; UNIVERSITY HEALTH SYSTEMS OF TEXAS, INCORPORATED., *doing business as* UNIVERSITY MEDICAL ASSOCIATES; UNIVERSITY MEDICAL ASSOCIATES,

*Defendants—Appellees.*

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-193

---

Before STEWART, DENNIS, and HAYNES, *Circuit Judges*.

PER CURIAM:*

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-50603

This appeal arises out of the death of Fernando Macias ("Macias") while in the custody of Defendant-Appellee Bexar County, Texas. Plaintiffs-Appellants Steven Macias, Yvonne Shilling, and Walter Macias—as the heirs to and representatives of Macias's estate—brought claims against Bexar County. Plaintiffs appeal the district court's entry of summary judgment in favor of Bexar County on their 42 U.S.C. § 1983 and Americans with Disability Act ("ADA") claims, as well as the district court's denial of leave to amend their complaint and denial of leave to re-serve Defendant-Appellee University Medical Associates. For the reasons that follow, we AFFIRM.

I

The claims in this case emerge from Macias's December 2018 death at University Hospital following his incarceration at the Bexar County Adult Detention Center ("BCADC"). In March 2018, the Bexar County Sheriff's Office responded to a call that Macias was having a mental health crisis and threatening his mother's safety. This situation escalated into a shootout between Macias and the authorities, wherein law enforcement agents accidentally shot and killed Macias's mother before arresting Macias. After a brief hospitalization for a gunshot wound, Macias was transferred in late March to the BCADC. At the time of his initial incarceration, medical records indicated that Macias weighed over 300 pounds. According to the complaint, Macias also suffered from schizoaffective disorder, delusional disorder, renal failure, and liver failure, though it is unclear when these issues were diagnosed.

In September 2018, a court found him incompetent to stand trial, and BCADC placed him on a waiting list for a state-operated mental health facility. Meanwhile, his health continued to deteriorate. In November 2018, Macias returned to the BCADC infirmary and continued to refuse dialysis. In December 2018, Macias's health forced him to go back and forth between

BCADC and University Hospital, where medical records indicate he weighed 196 pounds, was suffering from indications of late-stage kidney disease, sepsis, pressure sores, and missing nail beds on his toes. Macias died at University Hospital on December 16, 2018, from complications of these ailments.

Following Macias's death, Plaintiffs filed this suit in state court. After removal to federal court, Plaintiffs filed an amended complaint against various individuals and entities for various claims related to Macias's death. As relevant here, the complaint filed on March 22, 2021, included claims against Bexar County and "University Medicine Associates" under § 1983 and the ADA. Specifically, Plaintiffs allege that Bexar County and doctors at the University Hospital failed to adequately treat Macias's mental health condition, such that Macias's mental illness caused him to refuse dialysis and other medical care resulting in his death. At this point, Plaintiffs had served Bexar County but not University Medicine Associates.

In October 2021, the district court denied in part Bexar County's pending motion to dismiss, finding that two individual Bexar County officials were not entitled to qualified immunity. After those defendants filed an interlocutory appeal to the Fifth Circuit, the district court stayed the case pending appeal. A panel of this court reversed and rendered judgment in favor of the individual defendants in August 2022, finding they were entitled to qualified immunity. *See Macias v. Salazar*, No. 21-51127, 2022 WL 3044654, at *1 (5th Cir. Aug. 2, 2022).

When the district court reopened this case, the Plaintiffs still had not served "University Medicine Associates"—a party named in their operative complaint. However, they had attempted service on various other entities related to University Hospital, including the Bexar County Hospital District, University Health, and University Health Systems. At an October 2022

status conference with the magistrate judge overseeing pre-trial proceedings, Plaintiffs' counsel explained that she still desired to serve the legal entity employing the physicians responsible for Macias's medical care. Due to confusion over that entity's proper name, the order memorializing this status conference informed Plaintiffs that they could seek leave to serve "University Hospital Associates"—a non-existent entity. Though their complaint never named "University Hospital Associates" as a defendant, Plaintiffs nonetheless moved for leave to extend time of service by twenty-one days to serve "University Hospital Associates." The magistrate judge granted this motion. Subsequently, Plaintiffs requested issuance of summons on "University Hospital Associates." The following day, they also requested issuance of summons on "University Medical Associates" (not "University Medicine Associates" as listed in the operative complaint).

Finally, after continued confusion over what parties remained in the lawsuit and which of those Plaintiffs had properly served, the district court held a motion hearing in January 2023 on Bexar County Hospital District's motion to dismiss. There, Plaintiffs' counsel confirmed that Bexar County Hospital District, University Health, and University Health System were dismissed and no longer part of the case. Additionally, Plaintiffs clarified that they instead intended to file a motion for leave to serve University Medicine Associates—the named party in the operative complaint, and the legal entity in charge of the physicians Plaintiffs sought to hold liable. The district court instructed Plaintiffs to file that motion within a week.

However, Plaintiffs did not merely file a motion for leave to serve. Instead, they filed one of the motions now on appeal, styled as a "Supplement to Leave to Amend or Alternatively Serve Defendant University Medicine Associates." Rather than properly attach the second amended complaint—which added multiple parties and claims to the suit—as a proposed amended pleading to the motion, they filed it directly on the docket. After the parties

Case 5:21-cv-00193-JKP   Document 119   Filed 08/15/25   Page 7 of 13
Case: 24-50603   Document: 79-2   Page: 5   Date Filed: 08/15/2025

No. 24-50603

completed briefing on this motion, the magistrate judge issued her report recommending the district court deny Plaintiffs leave to amend the complaint and leave to serve University Medicine Associates, as both were filed well outside the date set by the court's scheduling order—a delay largely attributable to Plaintiffs' own failure to serve the correct party. Over Plaintiffs' objections, the district court adopted the report and recommendation to deny the motion. In addition, the district court confirmed that Plaintiffs had argued for amendment under the incorrect legal standard and could not demonstrate good cause for their delay in filing the motion. It also ordered the second amended complaint stricken from the docket as improperly filed.

In September 2023, Defendant-Appellee Bexar County filed its motion for summary judgement on the three remaining claims in the lawsuit, all against Bexar County: (1) a § 1983 claim based on conditions of confinement; (2) a § 1983 claim based on failure to train; and (3) an ADA claim. The district court granted Bexar County's motion for summary judgment on all claims. Plaintiffs timely appealed the district court's (1) denial of their motion for leave to amend and leave to serve; and (2) entry of summary judgment in favor of Defendant-Appellee Bexar County.

II

We review grants of summary judgment de novo. *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Although we "view all facts and draw all reasonable inferences in favor of the nonmovant," *Ross*, 993 F.3d at 321, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence," *Turner v. Baylor Richardson Med.*

Case 5:21-cv-00193-JKP   Document 119   Filed 08/15/25   Page 8 of 13
Case: 24-50603   Document: 79-2   Page: 6   Date Filed: 08/15/2025

No. 24-50603

*Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted). Moreover, we "may affirm a grant of summary judgment on any ground[] supported by the record," but only when that ground was "presented to the district court." *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

We review both denials of leave to amend and denials of requests to extend time to serve process for abuse of discretion. *Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 288 (5th Cir. 2024); *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994).

## III

### A

Plaintiffs appeal the district court's entry of summary judgment on both their Fourteenth Amendment conditions of confinement and failure to train claims brought pursuant to § 1983. However, rather than address the specifics of each claim, Plaintiffs merely present arguments related to the district court's determination that no constitutional violation occurred. That alone is insufficient to overturn the district court's grant of summary judgment.

To hold a municipality like Bexar County liable under § 1983,[1] a plaintiff must not only show that a constitutional violation occurred, but also that the violation "is inflicted pursuant to official policy, which may include duly promulgated policy statements, ordinances or regulations, or a persistent, widespread practice of [municipal] officials or employees, which is so common and well-settled as to constitute a custom that fairly represents

---

[1] Claims made under § 1983 against a municipality are often styled as "*Monell*" claims. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 660 (1978).

Case 5:21-cv-00193-JKP   Document 119   Filed 08/15/25   Page 9 of 13
Case: 24-50603      Document: 79-2      Page: 7      Date Filed: 08/15/2025

No. 24-50603

municipal policy." *Ford v. Anderson Cnty., Texas*, 102 F.4th 292, 322 (5th Cir. 2024) (cleaned up).

The district court's analysis did not end when it found that no constitutional violation occurred. It further addressed both of Plaintiffs' § 1983 claims in detail, finding additional grounds independently meriting summary judgment. For the conditions of confinement claim, the district court found Plaintiffs failed to show that "Bexar County's unconstitutional policy or practice resulted in Macias being denied medical care." Similarly, for the failure to train claim, the district court held that Plaintiffs failed to meet their evidentiary burden to "demonstrate a pattern."

Plaintiffs address neither of those rulings on appeal. In fact—despite being an essential part of a municipal liability claim—the words "pattern" or "practice" appear nowhere in their brief. And though this issue was raised in Bexar County's brief, Plaintiffs did not even bother to file a reply brief. Because Plaintiffs failed to address the district court's grounds for entering summary judgment on the lack of pattern or practice evidence on appeal, we consider both § 1983 claims "abandoned on appeal due to inadequate briefing." *Ford*, 102 F.4th at 322–23 (finding that plaintiffs' fleeting reference to "associated policies" was insufficient to avoid dismissal for inadequate briefing when appealing the entry of summary judgment on a municipal liability claim).

B

Plaintiffs also appeal the district court's grant of summary judgment on their ADA claim.[2] Again, they fail to adequately brief this claim on appeal.

---

[2] Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prove this claim, a plaintiff must demonstrate

7

Their sole argument on this issue appears to be that the district court erred by finding that Macias was not a person with a disability within the meaning of the ADA—the first element of an ADA claim.[3] But the district court explicitly acknowledged that Macias's status under the ADA was not in dispute. Its summary judgment decision instead rested on Plaintiffs' failure to meet the second and third elements of an ADA claim. By failing to "address the district court's analysis and explain how it erred," Plaintiffs forfeited their appeal of the ADA claim. *Sec. & Exch. Comm'n v. Hallam*, 42 F.4th 316, 327 (5th Cir. 2022).

Accordingly, we affirm the district court's grant of summary judgment.

IV

Plaintiffs also appeal the district court's denial of leave to amend and extend time to serve Defendant-Appellee University Medicine Associates.

A

Generally, Federal Rule of Civil Procedure 15 governs amendments to pleadings. FED. R. CIV. P. 15. But when "a party seeks to amend pleadings

---

three elements: (1) the plaintiff is a qualified individual within the meaning of the ADA; (2) the plaintiff is being excluded from participation in, or being denied benefits of services for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of the plaintiff's disability. *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).

[3] Plaintiffs' discussion of the ADA claim on appeal, in its entirety, consists of the following sentence: "Lastly, the district court finding that Mr. Macias's rights under the ADA was not violated as in err as well, as it is undisputed that he was Macias, who suffered from multiple diagnosed mental health disorders, was a person with a disability within the meaning of the ADA after he was adjudicated incompetent by the criminal court he allegedly refused medical care and denied care as a result of his mental disability."

Case 5:21-cv-00193-JKP   Document 119   Filed 08/15/25   Page 11 of 13
Case: 24-50603      Document: 79-2      Page: 9      Date Filed: 08/15/2025

No. 24-50603

in a fashion that would alter a deadline imposed by a scheduling order, Rule 15 is superseded by Rule 16." *Shaw*, 93 F.4th at 292; *see also S&W Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 536 n.4 (5th Cir. 2003) ("Having [considered the interaction between Rules 15(a) and 16(b)], we conclude that the presence of a scheduling order renders the Rule 15 inquiry secondary."). Rule 16 provides that a scheduling order "'may be modified only for good cause and with the judge's consent.'" *Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727, 733 (5th Cir. 2019) (quoting FED. R. CIV. P. 16(b)). "If a party shows good cause [under Rule 16], then the 'more liberal standard of Rule 15(a) will apply to the district court's denial of leave to amend.'" *Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (quoting *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008)).[4] Additionally, under Rule 16, a party is required "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Fahim*, 551 F.3d at 348 (quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed.1990)).

Here, Plaintiffs fail to make any explicit argument or statement about whether Rule 15 or Rule 16 should apply to our analysis.[5] Instead—by copying and pasting an uncredited, extended quotation pulled verbatim from

---

[4] Courts consider four factors under Rule 16 to determine if good cause exists: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Filgueira*, 734 F.3d at 422.

[5] This alone would be enough for us to consider this argument waived on appeal. *See JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) ("To avoid waiver, a party must identify relevant legal standards and any relevant Fifth Circuit cases." (citations omitted)).

No. 24-50603

this court's decision in *Sanders-Burns v. City Of Plano*, 594 F.3d 366, 379 (5th Cir. 2010)—they appear to argue that the district court erred under Rule 15. They are wrong. Rule 16 applies to our analysis, and Plaintiffs fail to demonstrate that there is good cause such that the district court abused its discretion in denying Plaintiffs leave to amend.

First, it is undisputed that Plaintiffs filed their motion for leave to amend their complaint over a month after the scheduling order's deadline for parties to seek leave to amend. Second, contrary to their assertion on appeal that the district court conducted "no analysis for the denial based on whether good cause existed," the district court found that the magistrate judge properly analyzed their motion under Rule 16 to find no good cause existed for leave to amend. In turn, the magistrate judge noted that "Plaintiffs do not address any [of the factors determining whether good cause exists] in their motion" for leave to amend, and accordingly the motion "fails to demonstrate good cause for allowing further amendments outside of the Scheduling Order's deadline."

The magistrate judge's words still ring true on appeal. Plaintiffs—despite both the magistrate judge and district court emphasizing that Rule 16 governs their request for leave to amend—still do not address the good cause factors and make no meaningful argument as to why good cause exists here. That alone is enough to support affirming the district court. *See Fahim*, 551 F.3d at 348 (holding that when the plaintiff fails to show good cause, "the district court's denial of leave to amend was not an abuse of discretion"); *see also* FED. R. CIV. P. 16 (providing that once a scheduling order has been entered, it "may be modified only for good cause and with the judge's consent"). Moreover, the Plaintiffs' continual failure at every stage of the

No. 24-50603

litigation to address the proper legal standards is inconsistent with the diligence required to warrant leave to amend. *See Fahim*, 551 F.3d at 348.

Finally, Plaintiffs also argue that the court abused its discretion[6] by failing to grant them leave to "re-serve" University Medicine Associates with the correct summons. Again, Plaintiffs have waived this argument through inadequate briefing—this time by failing to identify the relevant legal standards or cite to a single case supporting their argument. *See JTB*, 831 F.3d at 601 ("To avoid waiver, a party must identify relevant legal standards and any relevant Fifth Circuit cases." (citations omitted)). Accordingly, the district court did not abuse its discretion to the extent it denied Plaintiffs' request to extend time to serve process.

V

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[6] Plaintiffs never state which standard of review applies to this argument, but we review denials of motions to extend time to serve process for abuse of discretion. *See Kreimerman*, 22 F.3d at 645.